

Certified as a true copy and issued
as the mandate on **Aug 09, 2023**
Attest:
*Lyle W. Cayce*
Clerk, U.S. Court of Appeals, Fifth Circuit

# United States Court of Appeals
## for the Fifth Circuit

No. 22-30147

United States Court of Appeals
Fifth Circuit
**FILED**
July 18, 2023
Lyle W. Cayce
Clerk

Jeremiah Womack,

          *Plaintiff—Appellant*,

*versus*

Dometic Corporation; Skeeter Products, Incorporated, *doing business as* Skeeter Performance Fishing Boats,

          *Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:20-CV-76

_____

Before Graves, Ho, and Duncan, *Circuit Judges*.

## J U D G M E N T

This cause was considered on the record on appeal and was argued by counsel.

IT IS ORDERED and ADJUDGED that the judgment of the District Court is AFFIRMED.

IT IS FURTHER ORDERED that plaintiff-appellant pay to defendants-appellees the costs on appeal to be taxed by the Clerk of this Court.

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
July 18, 2023
Lyle W. Cayce
Clerk

No. 22-30147

───────────

Jeremiah Womack,

*Plaintiff—Appellant*,

*versus*

Dometic Corporation; Skeeter Products, Incorporated, *doing business as* Skeeter Performance Fishing Boats,

*Defendants—Appellees*.

───────────────────────────────

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:20-CV-76

───────────────────────────────

Before Graves, Ho, and Duncan, *Circuit Judges*.

Per Curiam:[*]

## I.

Jeremiah Womack bought a Skeeter bass boat with a Dometic hydraulic steering system. To break the boat in after the purchase, Womack took it out for five hours on a small, inland lake in Louisiana. During that first use of the boat, Womack noticed a bit of a skip to the left.

───────────

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

A few days later, Womack took the boat out on the lake again, intending to continue breaking it in. Before this second use of the boat, Womack familiarized himself with the user manual and its various warnings. The water on the lake was calm, apart from a slight chop.

Womack was only on the lake for about ten minutes, when he began making a gradual turn to the right. As he made this gradual turn, the boat suddenly turned sharply and hooked around. This threw Womack from his seat, injuring him.

Three days later, Womack took the boat to a local dealer in Louisiana to inspect the steering system. The local dealer thought there was a problem, so it sent the boat to Skeeter, the boat manufacturer, for further testing. Skeeter was unable to identify a problem with the steering system, but it still replaced the entire steering system. Skeeter then sent the old steering system to Dometic, the steering system manufacturer, which claimed it found no problem with the system.

Womack brought this suit against Skeeter, the boat manufacturer, and Dometic, the steering system manufacturer, seeking damages for his injuries from the boat accident. Womack raises two claims under the Louisiana Products Liability Act: (1) for dangerous construction and (2) for failure to warn. The district court granted summary judgment to Defendants on both claims. We affirm.

## II.

We "review[] a grant of summary judgment *de novo* and appl[y] the same standard as the district court." *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 310 (5th Cir. 2017) (citing *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010)). For us to grant them summary judgment, Defendants must "show[] that there is no genuine dispute as to

No. 22-30147

any material fact," such that they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## A.

Womack argues that Defendants are liable under a theory of unreasonably dangerous construction. The Louisiana Products Liability Act defines unreasonably dangerous construction as follows: "A product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer." La. Stat. Ann. § 9:2800.55. The "plaintiff must prove that a product is unreasonably dangerous in order to prevail in a products liability action." *Lawson v. Mitsubishi Motor Sales of America, Inc.*, 938 So. 2d 35, 47 (La. 2006).

Louisiana has adopted the doctrine of *res ipsa loquitur* as a way for the plaintiff to prove unreasonably dangerous construction even in the absence of direct evidence. *See id.* at 49 (Plaintiff can "use circumstantial evidence in order to make the inference that a product was unreasonably dangerous when that product left a manufacturer's control."). *See also Lyles*, 871 F.3d at 312 ("The Louisiana Supreme Court has specifically held that *res ipsa loquitur* can be applied in products liability actions . . . ."). "[T]he circumstantial evidence presented must exclude other reasonable hypotheses with a fair amount of certainty." *Lawson*, 938 So. 2d at 48 (cleaned up).

Invoking *res ipsa loquitur*, Womack references the testimony of expert witness Ken Smith, a trained naval engineer who works as a consultant on mechanical systems. As Womack interprets it, Smith's testimony shows that there are only three reasonable hypotheses to explain the accident: (1) "a passing wave," (2) "user input," or (3) "a failure in the system." Womack

cites his own sworn testimony that there were no waves on the water that day. This rules out a passing wave as the cause of the accident. And Womack also cites his own testimony that he was turning the boat slowly when he was thrown off his feet. This rules out user input, leaving only system failure. Thus, Womack concludes, "Smith's theory that th[e] most likely cause of the end-swap was a failure of the steering system creates a material issue of fact that should go before a jury."

If this were an accurate characterization of Smith's statements, then Womack might be right about *res ipsa loquitur*, entitling a jury to hear this case. But Smith's statements make clear that no reasonable jury could conclude that *res ipsa loquitur* applies. That's because Womack has failed to exclude all the reasonable possibilities that Smith's report identifies as potentially causing the accident. If you read Smith's report, you'll see that he identifies four potential causes rather than three: (1) a wave, (2) user input, (3) "air entrained in the hydraulic system," (4) "a mechanical problem with the system components." Like Womack, Smith rules out the first two explanations—a wave and user input—based on Womack's "experience and the reported water conditions." This means the cause of the accident was that "the boat suddenly and abruptly changed course."

Nevertheless, Smith is unable to pin the accident on a product defect, as Womack would need to go before a jury on *res ipsa loquitur*. Smith explains that the accident could have happened due to a "mechanical problem with the system components." Such a mechanical problem would likely amount to a construction defect. But Smith also notes that "air entrained in the system" could have caused the accident. "[E]ither of the most likely causes (air or mechanical failure) are possible and neither can be ruled out," Smith concludes. Furthermore, Smith explains, air in the system "is a consequence of either insufficient hydraulic fluid in the system, or of air [*sic*] is not properly purged from the steering system hydraulics."

No. 22-30147

So insufficient hydraulic fluid could have caused the accident. Although insufficient hydraulic fluid could certainly count as a product defect in some other case, we conclude that Womack's claim must fail here. That's because the plaintiff must "demonstrate not only what a manufacturer's specifications or performance standards are for a particular product, but how the product in question materially deviated from those standards so as to render it 'unreasonably dangerous.'" *Morris v. United Servs. Auto. Ass'n*, 756 So. 2d 549, 558 (La. Ct. App. 2nd Cir. 2000) (citations omitted). *See also Lyles*, 871 F.3d at 311 (same).

Womack has failed to show that a lack of hydraulic fluid counts a deviation from the manufacturer's standards, rather than a routine maintenance issue for which Womack himself was responsible. In other words, Womack has failed to show that insufficient hydraulic fluid is a product defect at all. Nor has Womack ruled out insufficient hydraulic fluid as a reasonable explanation for the accident. When any reasonable explanation apart from a product defect remains, *res ipsa loquitur* cannot apply.

Womack "has not met his burden to 'exclude all other reasonable explanations for his injuries.'" *Id.* at 313 (quoting *Lawson*, 938 So.2d at 49). Womack's invocation of *res ipsa loquitur* therefore fails. And Womack has no other way to prove that the unreasonably dangerous construction of the boat caused his injuries.[1] So we affirm the grant of summary judgment to Defendants on Womack's unreasonably dangerous construction claim.

---

[1] A jury could not find that "sticky valves" caused the accident. As Dr. Wendy Sanders, a mechanical engineer, explains in her uncontradicted expert testimony, "a sticky valve would . . . not manifest in the same fashion as the incident described by Mr. Womack." That's because a sticky valve would "result in a locked steering wheel, feedback in the steering wheel, or the wheel would turn in one direction," as Dometic

**B.**

Womack also seeks to establish liability under a theory of failure to warn. The Louisiana Products Liability Act defines inadequate warning as follows: "A product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product." La. Stat. Ann. § 9:2800.57(A). An "adequate warning" is one that "would lead an ordinary reasonable user . . . to contemplate the danger in using . . . the product and either to decline to use . . . the product or, if possible, to use . . . the product in such a manner as to avoid the damage . . . ." La. Stat. Ann. § 9:2800.53(9).

To survive summary judgment under a failure-to-warn theory in a Louisiana case, the plaintiff must show "that the product in question has a potentially damage-causing characteristic" and "that the manufacturer failed to use reasonable care to provide an adequate warning about this characteristic." *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 264 (5th Cir. 2002). "To [satisfy] this test, . . . a plaintiff must provide evidence about the cause, frequency, severity, or consequences of the dangerous characteristic in question." *Id.* (quotation omitted). *See also Reynolds v. Bordelon*, 172 So. 3d 607, 614 (La. 2015) (Plaintiff must "specify what warning was inadequate," must "provide a proposed adequate warning," and must "provide . . . evidence to support this claim.").

---

argues, citing Sanders. Yet, according to Womack's testimony, the steering was normal until the accident happened, and it also worked after the accident, though it had some slack.

No. 22-30147

In *Krummel v. Bombardier Corp.*, 206 F.3d 548 (5th Cir. 2000), the plaintiff sued a boat manufacturer under a Louisiana-law duty-to-warn theory. The plaintiff won in district court, yet we reversed. The plaintiff had failed to "provide evidence regarding the frequency of the accidents." *Id.* at 552. Without evidence of the "severity of the risk," the plaintiff could not show that the defendant had "failed to use reasonable care." *Id.* Similarly, Womack provides no evidence that the risk of the type of accident he experienced was great enough to merit warnings more extensive or more prominent than the warnings that Defendants already provided.

Womack's citation to Smith's expert report does not help him. Womack's opening brief argues "[t]here was an inherent danger in the normal use of the Dometic steering system that if too much air entered the steering system, then the steering system could fail which can result in injuries." Smith's report does contain conclusory complaints about the way Defendants warned users to check the fluid. For example, the font of the warning was not as large as the boat's brand name. But Smith's report nowhere provides evidence that the warnings were disproportionate to the risk of accident. Thus, Womack's failure-to-warn claim fails as a matter of law.

Consider also the statutory text at issue. Under the Louisiana Products Liability Act, "[a] manufacturer is not required to provide an adequate warning about his product when . . . [t]he user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic." La. Stat. Ann. § 9:2800.57(B)(2).

In *Morgan v. Gaylord Container Corp.*, 30 F.3d 586 (5th Cir. 1994), we invoked this statutory provision to grant a defendant summary judgment on a failure-to-warn claim. *See id.* at 591–92. In that case, the plaintiff was aware

7

No. 22-30147

that a pump would cause leaking, so the pump manufacturer "was not required to provide [plaintiff] an adequate warning concerning its pump." *Id.* at 591. Similarly here, Womack was aware that operating the boat without checking the steering system could result in an accident. After all, Womack testified that, prior to taking the boat out, he "s[aw]" and "review[ed]" the manual's various warnings to that effect. Because Womack knew that the steering system could cause the accident, Defendants were not required to warn him further.

* * *

We affirm the grant of summary judgment to Defendants.

# United States Court of Appeals
FIFTH CIRCUIT
OFFICE OF THE CLERK

LYLE W. CAYCE
CLERK

TEL. 504-310-7700
600 S. MAESTRI PLACE,
Suite 115
NEW ORLEANS, LA 70130

August 09, 2023

Mr. Tony R. Moore
Western District of Louisiana, Monroe
United States District Court
300 Fannin Street
Suite 1167
Shreveport, LA 71101-0000

    No. 22-30147   Womack v. Dometic Corporation
                        USDC No. 3:20-CV-76

Dear Mr. Moore,

Enclosed is a copy of the judgment issued as the mandate and a copy of the court's opinion.

Sincerely,

LYLE W. CAYCE, Clerk

By: _____
Majella A. Sutton, Deputy Clerk
504-310-7680

cc:
    Mr. Blake Rossi David Sr.
    Mr. Joseph G. Glass
    Mr. Michael Andrew Harowski
    Ms. Laura Len Pousson